UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No: 25-CR-497(PAM/ECW)

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JUAN CARLOS RODRIGUEZ ROMERO, )<br>)<br>Defendant. ) | **MOTION FOR HEARING REGARDING DESTRUCTION OF EVIDENCE** |

Defendant, Juan Rodriguez Romero, by counsel Bruce D. Nestor of De León & Nestor, LLS, and pursuant to the Due Process and Effective Assistance of Counsel provisions of the Fifth and Sixth Amendments to the Constitution of the United States, Rules 2 and 16 of the Federal Rules of Criminal Procedure, as well as the other authority cited herein, respectfully requests that the Court hold a hearing to determine the full scope of the circumstances surrounding the Government's handling and potential alteration and/or destruction of critical evidence and whether this action was done out of bad faith or just extreme negligence which will inform Mr. Rodriguez Romero's next request from this Court.

**I.    BACKGROUND**

Mr. Rodriguez Romero is charged in Count I and Count II of the Indictment with forcibly impeding, intimidating, and interfering with federal agents while they were engaged in and in account of their performance of their official duties, and that such acts involved a deadly or dangerous weapon, namely, a motor vehicle, in violation of 18 U.S.C.

1

§ 111(a)(1) and (b). (ECF# 1). The basis of the Government's criminal charge stems from an incident that occurred on December 21, 2205, at or near an apartment complex located in the 1300 block of Westminster Avenue in St. Paul, MN. The charges against Mr. Rodriguez Romero are based solely on the statements of nine federal agents involved in the incident who were interviewed by Homeland Security Investigation (HSI) agents on various dates from December 21, 2025, through February 13, 2026. While the various statements are contradictory and inconsistent with each other, they at various times allege physical contact between a white Toyota Forerunner driven by Mr. Rodriguez Romero and two government vehicles, described as a blue Ford Expedition and a white Dodge Durango. The audio recordings of the interviews of the federal agents involved also variously allege that Mr. Rodriguez Romero intentionally struck Deportation Officer (DO) Ibanez from one to three times during the course of two to four interactions with federal agents on December 21, 2025. During the course of this incident, the interviews allege that DO Ibanez discharged his firearm at Mr. Rodriguez Romero's vehicle either during second, third (or fourth) interaction with federal agents depending on the officer being interviewed.[1]

---

[1] A press release from the Department of Homeland Security (DHS) on December 21, 2025, alleges that Mr. Rodriguez Romero drove away from an initial traffic stop, "striking one of the officers," and then when stopped again "began ramming his car into an ICE vehicle and struck ANOTHER ICE officer… [who then] defensively fired two rounds from his service weapon." Rodriguez Romero is then described as driving to the front door of his apartment complex where he "rammed another ICE vehicle." *https://x.com/DHSgov/status/2002912585046438293?lang=en.* A press release from the Department of Justice (DOJ) on January 5, 2026, makes different allegations, claiming that Mr. Rodriguez Romero initially fled the traffic stop and "accelerated his car towards ICE officers on foot" without claiming he struck a federal agent at that time. The press release then claims when Rodriguez Romero was stopped a second time, he "again accelerated his car towards officers, one of whom fired his weapon towards Rodriguez Romero. Rodriguez

The various reports allege that the most serious injuries to a federal agent occurred when Mr. Rodriguez Romero came to a stop outside the entrance to his apartment complex. At that time, the statement from DO Morales claims that after stopping, Mr. Rodriguez Romero then put his vehicle into reverse and rammed the front-end of the white Dodge Durango behind him containing four federal agents. He then accelerated forward, striking the blue Ford Expedition and pinning DO Ibanez between Mr. Rodriguez Romero's vehicle and the blue Ford Expedition and injuring DO Ibanez's torso and hand.[2] Statements from two federal agents inside the white Dodge Durango, however, make different claims. DO Trombino states "the vehicle I was in struck the target vehicle from behind." DO Gamboa describes the white Dodge Durango as hitting Mr. Rodriguez Romero's vehicle from behind "because he abruptly stopped." Neither DO Trombino or DO Gamboa allege that Mr. Rodriguez Romero reversed his vehicle into the Durango in which they were sitting. The roadway conditions on December 21, 2025, were extremely icy, which would be consistent the white Dodge Durango being unable to stop and sliding into the rear end of Mr. Rodriguez Romeros' vehicle, pushing it into the blue Ford Expedition and pinning DO Ibanez.

---

Romero struck one officer while trying to flee during this second attempt."*https://www.justice.gov/usao-mn/pr/cuban-national-charged-assaulting-federal-officers-dangerous-weapon.*

[2] The interview of DO Morales on December 21, 2025, the team leader of the nine person team, claims DO Ibanez fired his weapon at this time, just prior to Mr. Rodriguez Romero entering his apartment building. The interview of DO Ibanez, on February 13, 2026, claims he discharged his weapon during a separate interaction with Mr. Rodriguez Romero, immediately prior to this incident.

Regardless of which federal agent interview one chooses to believe (if any), the various allegations consistently claim that the vehicle driven by Mr. Rodriguez Romero's vehicle was involved in a collision with at least two government vehicles and in physically contact at least one federal agent.

## WHITE TOYOTA FORERUNNER

The white Toyota Forerunner driven by Mr. Rodriguez Romero was initially left by federal agents at the scene of Mr. Rodriguez Romero's arrest in the parking lot of his apartment building. According to Mr. Rodriguez Romero's wife, neighbors first tried to move the vehicle and after about fifteen minutes, a tow truck showed up and towed the vehicle away. The vehicle was apparently taken to the Whipple Federal Building, as it was present at that location in February of 2026, when Mr. Rodriguez Romero's wife had it towed back to her apartment complex on Westminster Street.

On February 20, 2026, undersigned counsel, his investigator, and his paralegal viewed the vehicle. It was sealed with "EVIDENCE" tape on each door as depicted below:



4

In addition, Mr. Rodriguez Romero's wife stated that the front bumper had been removed and not returned when the vehicle was retrieved from the Whipple Building. The front bumper was not present on the vehicle on February 20, 2026, and it appeared to have been separated along a distinct line as depicted in the photo below:



In addition, as depicted in the photo above, the front passenger side tire was deflated and flat.

The Government's initial disclosure deadline in this matter was set for January 23, 2026 (ECF# 17), at which time the Government disclosed various written summaries of agent interviews, recordings of those interviews, three photos of vehicles involved in the incident, and two short video clips that appear to depict parked vehicles struck by Mr. Rodriguez Romero's vehicle. A subsequent disclosure deadline was set for February 13, 2026 (ECF# 27). No additional disclosures were made by February 13, 2026, although on February 19, 2026, the Government disclosed additional agent interviews, a single photo of an alleged injury to DO Ibanez's finger, and diagrams/maps made by agents during their interviews depicting how the incident on December 21, 2025, unfolded.

To date, the Government has not disclosed any written report or description in any form of when and how the white Toyota Forerunner was moved from the scene of Mr. Rodriguez Romero's arrest to the Whipple Building. It has not disclosed any reports as to any examination of the vehicle for evidentiary purposes or who sealed the vehicle with evidence tape. It has not disclosed how and when the front bumper of the vehicle was removed or where the front bumper is currently located. It has not disclosed whether the vehicle was examined for bullet holes, whether the front bumper contained bullet holes, or whether the flat tire was examined for bullet holes.[3] The Government has not disclosed any reports as to what steps, if any, were taken to preserve the evidentiary value of the white Toyota Forerunner during the time it was in the Government's possession at the Whipple Federal Building. The Government has disclosed a single photo of the white Toyota Forerunner, apparently taken at the scene of Mr. Rodriguez Romero's arrest on December 21, 2025, and depicting damage to the passenger side front corner of the vehicle, apparently caused when Mr. Rodriguez Romero struck parked cars not belonging to federal agents.

The condition of Mr. Rodriguez Romero's vehicle, including damage if any caused by multiple claimed incidents of ramming federal agents and vehicles, and the location and number of any bullet holes in the vehicle (including in the front bumper) is all critical and potentially exculpatory evidence. This is particularly so in light of Government's

---

[3] Despite the agent interviews claiming two different locations where DO Ibanez discharged his firearm, the Government has also not disclosed any reports indicating that federal agents sought to document the location of any shell casings or to recover any shell casings or bullet fragments from the location of the incidents resulting in the arrest of Mr. Rodriguez Romero.

contradictory and changing assertions as to location of such "ramming incidents," the number of times a federal agent was struck, the cause of any ramming or accident (including Mr. Rodriguez Romero's vehicle being struck from behind by the white Dodge Durango), and the location of the involved parties when shots were discharged by DO Ibanez. Whether the tire to the vehicle was deflated as a result of a shot fired by DO Ibanez, and the location of that act, is also critical to whether Mr. Rodriguez Romero could have subsequently operated the vehicle in a manner to intentionally strike a federal agent with the vehicle.

## BLUE FORD EXPEDITION AND WHITE DODGE DURANGO

The Government has produced a total of two photos which depict the condition of the blue Ford Expedition and white Dodge Durango, following their contact with the vehicle driven by Mr. Rodriguez Romero on December 21, 2025. One photo depicts the passenger side of the white Toyota Forerunner, with the front part of the blue Ford Expedition visible behind the Forerunner and adjacent to the driver side of the Forerunner. The second photo appears to depict damage to the front passenger side corner and hood of the white Dodge Durango.

On information and belief, the Government has not taken any steps to preserve the evidentiary value of either the blue Ford Expedition and white Dodge Durango involved in this incident. The Government has produced no reports indicating either vehicle has been securely stored for evidentiary purposes or examined and fully photographed prior to being returned to service. An examination of both vehicles is likely to show critical evidence. For instance, the damage to the white Durango could help determine whether it struck the

vehicle driven by Mr. Rodriguez Romero or if Mr. Rodriguez Romero reversed his Forerunner into the Durango (while the Forerunner had a flat tire, damaged front end, and Mr. Rodriguez Romero had the apparent intent only to exit his vehicle and enter his apartment building). Damage to the blue Ford Expedition could reveal where it had contact with Mr. Rodriguez Romero's vehicle and whether Mr. Rodriguez Romero was able to exit his vehicle and enter his apartment building after this contact or was unable to open his driver's side door due to being pinned up against the blue Ford Expedition.

Ultimately, what evidence has been lost or altered remains unknown at this time due to the lack of any disclosures by the Government regarding these matters.

## II. APPLICABLE LAW

The government must preserve apparently exculpatory evidence. *California v. Trombetta*, 467 U.S. 479 (1984). "To be considered 'apparently' exculpatory, the exculpatory nature of the evidence must be apparent before it is destroyed." *McCarthy v. Pollard*, 656 F.3d 478, 485–86, (quoting *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988)). The right not to have exculpatory evidence deliberately destroyed stems directly from the right to disclosure of exculpatory evidence identified in *Brady v. Maryland*. *Armstrong v. Daily*, 786 F.3d 529, 540 (7th Cir. 2015). These rights are all grounded in the due process guarantee of fundamental fairness in criminal prosecutions.

The 8th Circuit has consistently applied the standard set forth in *Youngblood* to spoliation claims in criminal cases. Under this standard, a due process violation occurs if (1) the government acted in bad faith, (2) the exculpatory nature of the evidence was apparent before its destruction, and (3) the defendant could not obtain the same evidence anywhere

8

else. *United States v. Lebeau*, 867 F.3d 960 (8th Cir. 2017). Bad faith requires proof of conscious wrongdoing and turns on the government's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed. *McCarthy v. Pollard*, 656 F.3d 478 (2011).

**III.    DISCUSSION**

Mr. Rodriguez Romero is charged with two counts of assaulting a federal officer with a deadly weapon (his white Toyota ). The government has made clear this assault is premised on him driving into and striking DO Ibanez and intentionally "ramming" two government vehicles. The Government has known at least since its initial interviews on December 21, 2025, of the federal agents involved, that the agents make contradictory claims that Mr. Rodriguez Romero rammed the white Dodge Durango and blue Ford Expedition, or that the white Dodge Durango struck Mr. Rodriguez Romero's vehicle, pushing it into the blue Ford Expedition.

Both Mr. Rodriguez Romero's vehicle and the two Government vehicles should have been held under protocols to preserve their evidentiary value until at least the condition of the vehicles was completely documented, as well as until defense counsel and their expert witness were allowed to examine the vehicle for exculpatory evidence to support the claim that it was the white Dodge Durango which struck Mr. Rodriguez Romero's vehicle. In addition, the nature and location of the shooting by DO Ibanez is critical to issues of motive and potential fabrication of evidence by the involved government agents to cover up a "bad shooting." The front bumper of Mr. Rodriguez Romero's vehicle is critical to this issue, as DO Ibanez is described as shooting at the

left front portion and engine block of Mr. Rodriguez Romero's vehicle.

The Government has yet to provide defense counsel with even basic information about the conditions under which the various vehicles were seized, stored, and examined (if they were examined), who authorized the release of these critical pieces of evidence without notifying defense counsel, and what if any changes were made to Mr. Rodriguez Romero's vehicle while it was in Government custody.

While the damage may already be done, as the evidence, if altered, can never be restored to its relevant condition, a hearing is necessary to determine how this occurred and to what extent the vehicle was altered. For the foregoing reasons, Mr. Rodriguez Romero, through counsel, respectfully requests a hearing on this issue at which the Government will be required to address the issues of how it seized and maintained the vehicles for evidentiary purposes, examined the vehicles for evidentiary purposes, and/or removed or altered any part of the vehicles.

Dated: February 23, 2026        S/BRUCE D. NESTOR
                                Bruce D. Nestor, 0318024 – MN
                                DE LEÓN & NESTOR, LLC
                                3547 Cedar Avenue South
                                Minneapolis, MN  55407
                                (612) 659-9019
                                (612) 436-3664 – Facsimile
                                nestor@denestlaw.com