UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No: 25-CR-497(PAM/ECW)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **MOTION FOR** |
| | ) | **EXAMINATION AND** |
| | ) | **DISCLOSURE OF** |
| v. | ) | **GOVERNMENT** |
| | ) | **AGENT/WITNESS** |
| JUAN CARLOS RODRIGUEZ ROMERO, | ) | **COMMUNICATIONS** |
| | ) | |
| Defendant. | ) | |

Defendant, Juan Rodriguez Romero, by and through counsel Bruce D. Nestor of De León and Nestor, LLC states as follows in support of his Motion to for Disclosure of Government Agent/Witness Communications:

INTRODUCTION

Juan Rodriguez Romero ("Rodriguez") brings this Motion pursuant to Fed.R.Crim.Pro. 16(a)(E), 18 USC §3500 ("The Jencks Act"), this Court's Brady Obligation Order entered pursuant to the Due Process Protections Act (ECF #9), *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and *Giglio v. United States*, 405 U.S. 150 (1972) and its progeny. Rodriguez seeks an Order of this Court requiring the Government to examine communication devices and electronic communications possessed and used by its government agents/witnesses in this matter from December 21, 2025, through February 13, 2026, and to disclose any communications or contacts relevant to their anticipated testimony or which would constitute *Brady* or *Giglio* material.

1

<u>FACTUAL BACKGROUND</u>

Rodriguez is charged by Indictment with three counts of Assault on a Federal Officer under 18 USC §111(a)(1) and (b). All three counts arise from events which occurred on December 21, 2025.

The Government had an initial disclosure date set by the Court for January 23, 2026 (ECF #17). By that date, the Government disclosed 39 pages of summaries written by Homeland Security Investigation (HSI) Agents of their interviews of federal agents involved in Rodriguez's arrest, audio recordings of those interviews, two short videos of damage to parked vehicles caused by Mr. Rodriguez, and three photos of damage to Mr. Rodriguez's vehicle and two government vehicles. Six federal agents were primarily involved in the arrest of Mr. Rodriguez, consisting of two groups in two vehicles.[1] One group, consisting of DO Morales and DO Ibanez, were in a blue Ford Expedition. DO Morales was the "team leader" of the entire group. A second group, consisting of DO Trombino, DO Baldwin, DO Gamboa, and DO Chan, were in a white Dodge Durango. The interviews disclosed on January 23, 2026, relating to these six agents were all conducted by HSI agents on December 21, 2025, of DO Morales, DO Trombino, DO Baldwin, DO Gamboa, and DO Chan.

The Government had a second disclosure date of February 13, 2026. (ECF#27). On February 19, 2026, the Government made additional disclosures.

---

[1] Three additional federal agents were in a separate black Ford Expedition and played a limited role in the events resulting in the charges against Mr. Rodriguez.

These disclosures included a photo of an injury to DO Ibanez's hand,[2] interview summaries of re-interviews of DO Morales, DO Trombino, and DO Gamboa conducted by HSI agents on January 15, 2026,[3] three photos previously disclosed on January 23. 2026, and aerial photos/maps of the location of the incident on December 21, 2025, marked up by the agents who were re-interviewed on January 15, 2026.

The Government also disclosed on February 19, 2026, an audio recording, but not a witness summary, of an interview conducted on February 13, 2026, of DO Ibanez. Based on the disclosures made by the Government, this was the first statement given by DO Ibanez regarding the events of December 21, 2025. DO Ibanez is the federal agent who the Government claims was physically contacted and injured by Rodriguez on December 21, 2025, and who is alleged to have discharged his firearm at Rodriguez's vehicle.

On December 21, 2025, at 7:22 p.m., the Department of Homeland Security (DHS) posted on Twitter/X about the arrest of Rodriguez. The post included two photos disclosed by the Government to counsel on January 23, 2026. It also included the claim that "[Rodriguez Romero] began ramming his car into an ICE vehicle and struck ANOTHER ICE officer." (Exhibit 1). The Government has

---

[2] The Government has represented to counsel that this injury to DO Ibanez does not result from charged conduct against Rodriguez.

[3] Interview summaries and audio recordings from January 15, 2026, of the three additional federal agents who were in the black Ford Expedition on December 21, 2025, were also provided.

represented to counsel that it does not now believe that Rodriguez at any time on December 21, 2025, "began ramming his car into an ICE vehicle." The Government has not made any disclosures of statements or information provided to DHS which formed the basis for these statements in the December 21, 2025, post on Twitter/X.

In an internet search, counsel has also found a photo of Rodriguez, in the back of what appears to be the blue Ford Expedition used by DO Morales and DO Ibanez on December 21, 2025. This photo was published by Alpha News[4] on January 7, 2026, with an author listed as "Crime Watch MN." This photo was accompanied by a photo of damaged vehicles which was disclosed by the Government to counsel on January 23, 2026. (Exhibit 2). This photo of Rodriguez in the back of what appears to be the blue Ford Exhibition on December 21, 2025, following his arrest by federal agents, has not been disclosed by the Government to counsel.

<u>ARGUMENT</u>

Rodriguez seeks an order from this Court requiring the Government to examine cell phones, communication devices, and electronic communications, of DO Morales, DO Ibanez, DO Trombino, DO Baldwin, DO Gamboa, and DO Chan. Rodriguez further asks the Court to require the Government to disclose any

---

[4] Alpha News is a self described "team of independent journalists with a mission of reporting stories that go untold by [Minnesota's] mainstream media. Our dedication to uncovering the truth is persistent and unwavering." *https://alphanews.org/about/.*

communication between the federal agents and/or content relevant to the incident resulting in the arrest of Rodriguez on December 21, 2025, which occurred from December 21, 2025, through February 13, 2026. This request is made because Rodriguez is able to make a substantial showing that such communications exist, that such communications are material to the credibility of Government witnesses, and that identification and disclosure of such communications is required by *Brady* and *Giglio* and their progeny.

"The Brady rule is based on the requirement of due process." *United States v. Bagley*, 473 U.S. 667, 675 (1985). "Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur." *Id.* "Impeachment evidence . . . is evidence favorable to an accused . . . so that, if disclosed and used effectively, it may make the difference between conviction and acquittal." *Id.* "When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within the general rule of *Brady*." *Id*. at 677.

When the defense requests materials of testifying officers, the government must "disclose information favorable to the defense that meets the appropriate standard of materiality." *Henthorn*, 931 F.2d at 31 (quoting *United States v. Cadet,* 727 F.2d 1453 (9th Cir. 1984)). "If the prosecution is uncertain about the materiality of information within its possession, it may submit the information to the trial court for an *in camera* inspection and evaluation." *Id.*

A. **Statements of DO Morales**

DO Morales gave his initial statement to an HSI Investigator regarding the arrest of Rodriguez on December 21, 2025. The summary of his interview indicates it began at 9:47 a.m. and it appears that he was the first federal agent involved in this matter to be interviewed. Disclosures by the Government indicate that following the arrest of Rodriguez on December 21, 2025, DO Morales transported Rodriguez to the Whipple Federal Building.   DO Ibanez was transported to the hospital by other federal agents and DO Trombino, DO Baldwin, DO Gamboa, and DO Chan traveled back to the Whipple Federal Building in the white Dodge Durango.

The statement given by DO Morales on December 21, 2025, is substantially inconsistent with the other statements given by federal agents involved in this matter. These inconsistencies are set out in detail in the defendant's Motion for Disclosure of Grand Jury Testimony (ECF#32). During an initial traffic stop of Rodriguez, DO Morales does not describe DO Ibanez as being struck by Rodriguez's vehicle. DO Morales then entirely omits a second incident of interaction between Rodriguez and federal agents, where all other federal agents interviewed claimed that DO Ibanez discharged his firearm at Rodriguez's vehicle. Instead, DO Morales describes an interaction between Rodriguez and federal agents on the east side of Rodriguez's apartment building, outside the common entrance to the corridor leading to Rodriguez's apartment and states that DO Ibanez discharged his firearm at that time. DO Morales' statement on December

6

21, 2025, can be read as attempting to bolster the basis for DO Ibanez discharging his firearm, by claiming that it occurred immediately after Rodriguez reversed his vehicle and "rammed" a government vehicle, and then accelerated forward, striking another government vehicle and pinning DO Ibanez between two vehicles, at which time DO Ibanez discharged his firearm. Such a description of events, which the Government now appears to believe is false, is intended to create a scenario where DO Ibanez "feared for his life" when he discharged his firearm.

In the summary of DO Morales statement from January 15, 2026, which was produced to counsel on February 19, 2026, DO Morales now claims that DO Ibanez was struck by Rodriguez's vehicle during the initial traffic stop. This directly contradicts his prior statement of December 21, 2025. He further describes the second incident, occurring in a parking lot after Rodriguez struck a parked car, in details that contradict his prior statement but correlate with statements of other federal agents given on December 21, 2025 – that DO Ibanez was also struck during this second incident and discharged his firearm at this time, not during the third incident after being pinned between vehicles by Rodriguez. DO Morales' statement of January 15, 2026, also omits his prior description of Rodriguez reversing, accelerating and "ramming" two government vehicles as described in his statement of December 21, 2025.

DO Morales' changed description of the events of December 21, 2025, which results in him giving a statement on January 15, 2026, which more closely matches the description given twenty-five days earlier by other federal agents,

7

raises a substantial basis to conclude that he reviewed the prior statements of other federal agents, and/or had direct communication with them after December 21, 2025, and before January 15, 2026. In particular, the claim that DO Ibanez was now struck by Rodriguez's vehicle during the first traffic stop directly contradicts his prior statement in a manner to match DO Ibanez's description of events (not given until February 13, 2026) and of statements given by DO Baldwin.

### B. Statement of DO Ibanez

Based on disclosures by the Government, the first interview of DO Ibanez was conducted on February 13, 2026, or fifty-four days after the arrest of Rodriguez. DO Ibanez is identified by the Government as the victim in Count I of the Indictment, and Victim 1 in Count II of the Indictment.[5]

DO Ibanez's statement given on February 13, 2026, is generally consistent with the broad narrative given by other federal agents in their statements of December 21, 2025, and generally consistent with the second statement given by DO Morales on January 15, 2026. The delay in obtaining a statement from DO Ibanez at least raises the question of whether during this fifty-four day period he communicated with other federal agents involved in the events of December 21, 2025.

Further, on two occasions during his statement of February 13, 2026, DO Ibanez appears to make reference to communications that he had with other

---

[5] DO Ibanez was present with legal counsel during his interview of February 13, 2026. It is unknown whether the Government disclosed to DO Ibanez's legal counsel any of the statements of other federal agents involved in this incident.

federal agents involved in the incident after December 21, 2025, and before February 13, 2026.

First, DO Ibanez describes that after he discharged his firearm at Rodriguez's vehicle, he got "hit again." He says that DO Morales "grabs me. He tells me, he grabs me. But I don't recall him grabbing but he said he would grab me." This appears to refer to a conversation with DO Morales after December 21, 2025, in which DO Morales is recounting the incident to DO Ibanez and telling him that he "grabbed him." This language about "grabbing" DO Ibanez also appears in DO Morales statement of December 15, 2025, although in temporal reference to DO Ibanez being pinned between two vehicles during the "third incident."

Second, the interviewing HSI Agent asks DO Ibanez if he had any interaction with Rodriguez. DO Ibanez replies that he and Rodriguez did not speak. He then states that during the third incident, when DO Ibanez was pinned between the two vehicles, "I didn't talk to him at all, you know. I know, I recall them saying that they, he did talk, but it wasn't to me, okay." This statement again appears to refer to a conversation with other federal agents occurring after the arrest of Rodriguez on December 21, 2025, regarding the events of that date.[6]

---

[6] As set forth in Rodriguez's Motion to Suppress – Custodial Interrogation Statements (ECF #30), DO Morales claims to have "interviewed" Rodriquez after his arrest. Such an "interview" would most likely have occurred as DO Morales transported Rodriquez to the Whipple Federal Building, or at the Whipple Federal Building itself, after DO Morales and DO Ibanez were separated and DO Ibanez was transported to the hospital.

### C. DHS TWITTER/X POST OF DECEMBER 21, 2025

The Government has not made disclosure of any information provided to DHS which formed the basis for the DHS post of December 21, 2025 (Exhibit 1), nor how that information was provided to DHS, nor whom provided that information. The post largely tracks the statement of DO Morales from that date, in alleging that an ICE agent "fired two rounds from his service weapon" after [Rodriguez] "began ramming his car into an ICE vehicle." The Government should be required to disclose any communications to DHS prior to 7:22 p.m. on December 21, 2026, which formed the basis for the statements in Exhibit 1. This disclosure should also address whether any law enforcement agent disclosed the statement of DO Morales to DHS for purposes of public dissemination, during an ongoing, active investigation, in which the target of the investigation had not yet been charged.

### D. ALPHA NEWS PHOTO

Exhibit 2 is a photo published by Alpha News on January 7, 2026. It was not disclosed by the Government during discovery and it appears to have been taken by a federal agent involved in the arrest of Rodriguez. It is published alongside a separate photo of Rodriguez's vehicle, which was disclosed by the Government as part of its discovery obligations. This raises a substantial inference that other photos taken by federal agents that date may exist on their cellphones or other electronic devices. This would not be the first time that Alpha News appears to have gained access to photos or video taken by a federal agent in relation to a

10

criminal investigation. On January 7, 2026, federal Agent Jonathan Ross shot and killed Renee Nicole Good in south Minneapolis. On January 9, 2026, Alpha News then released cell-phone footage taken by Jonathan Ross, apparently on his personal cell-phone as he shot Ms. Good. This video was not released through official channels and first appeared in the public domain when it was released by Alpha News.

### E.  COMMUNICATIONS IN OTHER ICE INVOLVED SHOOTINGS

On October 4, 2025, United States Border Patrol Agent Charles Exum shot United States citizen Marimar Martinez five times while she was in her vehicle in Chicago. DHS press statements claimed that Ms. Martinez "rammed" Exum's vehicle and she was charged on October 5, 2024, with forcibly assaulting, resisting, impeding, interfering in violation of 18 USC §111(a)(1).

The case against Ms. Martinez was dismissed by federal prosecutors on November 20, 2025. Prior to dismissal, text messages from CBP Agent Exum to other federal agents were obtained, during which Exum appeared to be bragging about the shooting and stating "read it…. I fired 5 shots and she had 7 holes. Put that in your book boys." Body-camera footage released on February 26, 2026, also revealed other text messages, including Agent Exum writing that his superiors including "Chief Bovino…, Sec Noem and El Jefe [President Trump] himself….

according to Bovino" had been supportive.[7] Other text messages depicted on the body camera footage included messages from other federal agents about the shooting. One message stated, "good job brother, glad you are unharmed and get to live to tell the story. You are a legend among agents you better f---in know that. Beers on me when I see you at training."

The discovery of text messages on Agent Exum's cellphone played a critical role in undermining a false prosecution narrative and the subsequent dismissal of criminal charges against Ms. Martinez. Mr. Rodriguez has made a substantial showing that in multiple instances, federal agents involved in immigration enforcement have created and stored relevant communications and photos on their personal phones. The Government should be required to search for and obtain any such communications or photos relevant to the instant matter and disclose those items to Rodriguez.

CONCLUSION

This motion is based on the indictment, records and files in the above-entitled action and any and all other matters which may be presented prior to or at the time of the hearing of said motion. Mr. Rodriguez Romero asks that this matter be set for hearing, and that upon hearing, the Court order the Government to examine communication devices and electronic communications possessed and used by its government agents/witnesses in this matter from December 21, 2025,

---

[7] *https://chicago.suntimes.com/immigration/2026/02/10/marimar-martinez-the-chicago-woman-shot-by-border-patrol-agent-expected-to-file-lawsuit-release-evidence*

through February 12, 2026, and to disclose any communications or contacts relevant to their anticipated testimony or which would constitute *Brady* or *Giglio* material.

Date: <u>February 27, 2026</u>                        <u>      S/BRUCE D. NESTOR      </u>
                                              Bruce D. Nestor, 0318024 – MN
                                              DE LEÓN & NESTOR, LLC
                                              3547 Cedar Avenue South
                                              Minneapolis, MN  55407
                                              (612) 659-9019
                                              (612) 436-3664 – Facsimile
                                              nestor@denestlaw.com

                                              ATTORNEY FOR JUAN RODRIGUEZ
                                              ROMERO