UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No: 25-CR-497(PAM/ECW)

| | |
|---|---|
| UNITED STATES OF AMERICA,         )<br>                                                              )<br>           Plaintiff,                            )<br>                                                              )<br> v.                                                         )<br>                                                              )<br> JUAN CARLOS RODRIGUEZ ROMERO,  )<br>                                                              )<br>           Defendant.                        ) | **DEFENDANT'S MOTION FOR DISCLOSURE – OFFICER CONDUCT AND TRAINING** |

Defendant, Juan Rodriguez Romero, by and through counsel Bruce D. Nestor of De León and Nestor, LLC states as follows in support of his Motion for Disclosure – Office Conduct and Training.

## INTRODUCTION

Beginning in December of 2025 through February of 2026, the federal government deployed thousands of federal agents to Minnesota. Almost uniformly, these agents acted as if they were a secret police force. They concealed their identities by wearing masks, failed to display name or number identification badges, used false license plates on their vehicles, and took other steps to conceal their identity from the public. At the same time, both judicial findings and citizen observers documented widespread acts of misconduct by federal agents including the excessive use of force, retaliation against citizens engaged in protected First Amendment activity, and false reporting of threats and assaults on federal agents.

1

By this Motion for Disclosure, Mr. Rodriguez Romero ("Rodriguez") seeks information held by the Government which is subject to disclosure under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and *Giglio v. United States*, 405 U.S. 150 (1972) and its progeny, which would allow Mr. Rodriguez to identify whether the federal agents and witnesses in his case were involved in other acts of misconduct or false statement, evidence of which would be admissible at trial of this matter under Fed.R.Evidence 404(b).

## ARGUMENT

Rule 404(b) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Propensity evidence, whether of a person's general character or examples of specific bad acts, is ordinarily excluded because of the likelihood the jury may misuse it. *United States v. Johnson*, 439 F.3d 884, 887 (8th Cir. 2006)

Rule 404(b) provides, however, evidence of prior bad acts "may ... be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Rule 404(b) is thus "a rule of inclusion rather than exclusion and admits evidence of other crimes or acts relevant to any issue in the trial, unless it tends to prove only criminal disposition." *United States v. Simon,* 767 F.2d 524, 526 (8th Cir.1985) (internal quotations omitted). Thus, evidence of prior bad acts "probative of the crime charged" is not excluded under Rule 404(b). *United States v. DeLuna,* 763 F.2d 897, 913 (8th Cir.1985).

Other acts evidence is admissible under Rule 404(b) if it is 1) relevant to a material issue raised at trial, 2) similar in kind and close in time to the crime charged, 3) supported by sufficient evidence to support a jury finding that a witness committed the other act, and 4) its probative value is not substantially outweighed by its prejudicial value. *United States v. Kern,* 12 F.3d 122, 124–25 (8th Cir.1993).

The Eighth Circuit has explicitly recognized that Rule 404(b) is not limited to prior bad acts but can encompass acts occurring after the incident alleged in the case. In *United States v. Kitchen*, the court stated that Rule 404(b) "is not limited to evidence of prior bad acts; instead, it expressly encompasses 'any other crime, wrong, or act." *United States v. Kitchen,* 149 F.4th 1019, 1026 (8th Cir. 2025), *reh'g denied*, No. 24-1777, 2025 WL 2659221 (8th Cir. Sept. 17, 2025).

The court in *United States v. Grady* similarly held that "the rule permitting admission of extrinsic bad act evidence for a non-propensity purpose embraces not only prior acts but subsequent conduct." *United States v. Grady*, 88 F.4th 1246, 1258 (8th Cir. 2023). *See also United States v. Thomas*, 593 F.3d 752, 758-59 (8th Cir. 2010) (permitting admission of subsequent drug activity occurring four years after the charged conduct because "[c]onsidering the similarities ... we cannot say the mere passage of four years' time renders the evidence irrelevant to show knowledge or intent"); *United States v. Johnson*, 934 F.2d 936, 939-40 (8th Cir. 1991)(permitting the admission under Rule 404(b) of two drug transactions that occurred weeks after the charged conduct as probative of the defendant's knowledge and intent).

Federal Rule of Evidence 404(b) permits the admission of evidence of subsequent bad acts offered for non-propensity purposes if the evidence is relevant to a material issue, the evidence is similar in kind and close in time to the crime charged, the evidence is proven by a preponderance of the evidence, and the potential prejudice does not substantially outweigh its probative value. *United States v. Grady*, 88 F.4th 1246, 1258 (8th Cir. 2023).

Mr. Rodriguez has not seen the faces of the armed federal agents that surrounded his vehicle, sought to break his windows, shot at his vehicle, rammed their car into the rear of his vehicle, and ultimately arrested him on the threshold of his apartment. He is unable to identify the federal agents who arrested him by a badge number, nametag, or distinctive uniform. At trial of this matter, he would be entitled to raise a defense that he did not know the armed agents surrounding his vehicle were law enforcement officers. He is entitled to raise the defense that he acted reasonably in response to excessive force from federal agents who were the aggressors. He is entitled to raise a defense that federal agents will testify falsely to cover up their own excessive use of force and failure to follow their training and agency policies.

Although apparently no federal agent has yet been held accountable for any act of misconduct or false statement during Operation Metro Surge in Minnesota, there is widespread documentation showing such potential misconduct occurred. The American Civil Liberties Union of Minnesota (ACLU) has collected declarations from over 80 Minnesotans documenting how federal agents used excessive force, chemical irritants, and less lethal munitions as means of retaliation directed at individuals engaged in

protected First Amendment activity.[1] These declarations were submitted in support of a class action lawsuit in *Tincher v. Noem*, 0:25-CV-4669 (KMM/DTS) (District of Minnesota, 2/13/26). Although the litigation in *Tincher* continues, the Court has already made a number of findings that federal agents have engaged in misconduct and acts of giving false statements. *See, e.g., Tincher v. Noem,* No. 0:25-CV-4669 (KMM/DTS), 2026 WL 125375, at *26 (D. Minn. Jan. 16, 2026) (finding that the sworn declaration of ICE Director Easterwood was "largely contradicted" by video evidence). Such findings mirror similar findings of federal courts around the United States regarding the actions of federal immigration agents. For example, Judge Sara Ellis, who heard testimony and received evidence related to DHS' First Amendment violations in Chicago, determined that DHS agents and officials made false statements and lacked credibility. *See, e.g., Chicago Headline Club, et al. v. Noem, et al.*, No. 25 cv 12173, 2025 WL 3240782, at *9-13 (N.D. Ill. Nov. 20, 2025)(documenting numerous false statements under oath by ICE agents and officials).[2] Similarly, ICE agents have lied to federal investigators in the District of Minnesota, resulting in the procurement of arrest warrants and filing of

---

[1] *https://www.startribune.com/more-than-80-minnesota-observers-and-protesters-detail-mistreatment-by-ice/601581136*

[2] *See also* Jon Seidel, *Tracking every known federal prosecution in Chicago tied to Trump's immigration blitz*, Chicago Sun-Times, February 18, 2026, (available at https*://chicago.suntimes.com/2026/tracker-federal-prosecutions-chicago-status-trumps-immigration-blitz-ice*) (recording that of thirty-two federal cases brought in Chicago alleging assault on a federal officer, three had been rejected by the grand jury, one had resulted in acquittal, and fourteen others had been voluntarily dismissed by the government, and no defendants had been convicted).

criminal charges based on these lies.[3] Although federal agencies and authorities may not be holding these agents accountable, state prosecutors have identified at least 17 incidents involving potential unlawful conduct by federal agents.[4]

In order to facilitate his ability to investigate and identify whether agents involved in the instant case have been involved in other incidents of misconduct which are documented through publicly available videos and/or declarations, Rodriguez seeks an order of this Court requiring the Government to disclose with respect to DO Morales, DO Ibanez, DO Trombino, DO Baldwin, DO Chan, and DO Gamboa, the following:

A. A full frontal, picture of the face of each of the above named DOs involved in the incident of 12/21/25 with Mr. Rodriguez Romero. Such a photo is required as the best means of identifying whether the DO may appear in other publicly available photos and/or video.

B. A photo or description of any badge number, name or other identifying information worn by each of the above named DOs involved in the incident of

---

[3] *See, e.g.,* Government's Motion to Dismiss Complaint with Prejudice, *United States v. Aljorna*, Case No. 26-mj-23, ECF No. 48 (D. Minn., filed Feb. 12, 2026) ("Newly discovered evidence in this matter is materially inconsistent with the allegations in the Complaint Affidavit, filed on January 16, 2026, as ECF 1-1, as well as the preliminary-hearing testimony (ECF 18, 19) that was based on information presented to the Affiant [by ICE agents]."); Government's Motion to Dismiss, *United States v. Youssouf*, Case No. 26-mj-85, ECF No. 23 (D. Minn., filed Feb. 18, 2026) (voluntarily dismissing case where affidavit supporting complaint stated agents told investigator that defendant had violently assaulted them, including kicking and punching them); Government's Motion to Dismiss, *United States v. Collyard*, Case No. 25-mj-854, ECF No. 20 (D. Minn., filed Jan. 20, 2026) (voluntarily dismissing case where agents told investigator defendant had threatened to kill officers and tackled officer); Minute Entry, *United States v. Espinoza-Espinoza*, Case No. 26-mj-30, ECF No. 10 (D. Minn., dated January 26, 2026) (recording government motion to dismiss complaint where affidavit supporting complaint stated agents told investigator that defendant rammed agents with his car, injured agents and resisted arrest).

[4] https://www.startribune.com/greg-bovino-other-federal-agents-investigated-for-actions-during-operation-metro-surge/601591378?utm_source=newsletter&utm_medium=email&utm_campaign=breaking_news&utm_term=Breaking%20News

12/21/25 with Mr. Rodriguez Romero, during the dates of their deployment/involvement with Operation Metro Surge from 12/1/25 through 2/13/26.

C. Photos of any "agitators," citizens, protesters, or observers, taken by each of the above named DO's involved in the incident of 12/21/25 with Mr. Rodriguez Romero, during the dates of their deployment/involvement with Operation Metro Surge from 12/1/25 through 2/13/26. This specifically requests, but is not limited to, photos of any person accused by the DO of impeding, obstructing, or interfering with federal agents. Such a request is made based on publicly available information that federal agents routinely took such photos and that the photos taken on a particular date, at a particular location, and of a particular person, would link that agent as being present during a particular event.

D. A list of all persons arrested or detained by each of the above named DOs, or for whom the above named DOs appear in reports related to the arrest of said person, whether for civil immigration violations or violations of criminal law, during the course of that DO's deployment in Minnesota during Operation Metro Surge from 12/1/15 through 2/13/26. Such a request is made on the basis that such information would link that agent as being present during a particular event.

E. All narrative reports or recorded statements given by each of the above named DOs in connection with their official duties from 12/1/25 through 2/13/26 with Operation Metro Surge in Minnesota. Such a request is made on the basis that such information would link that agent as being present during a particular event.

F. Any video footage known to or possessed by the Government (including bystander video and video created by law enforcement (including body camera footage) related to each of the above named DOS involved in the incident of 12/21/25 with Mr. Rodriguez Romero, during the dates of their deployment/involvement with Operation Metro Surge from 12/1/25 through 2/13/26, depicting the use of force to include firearms, chemical irritants, and physical force.

G. Any records showing the date and location of the assigned area of operations for each of the above named DOs during the dates of their deployment/involvement with Operation Metro Surge from 12/1/25 through 2/13/26.

Without limitation as to time or place, the following information contained in official government records or the personnel files of the above named DO's involved in

the arrest of Rodriguez on December 21, 2025, during any time the DO was employed as a federal agent:

    A. Any use of force report regarding the use of force by the DO.

    B. Any complaints of misconduct by the DO.

    C. Any disciplinary action taken against the DO.

    D. The criminal history of each DO.

In order to ascertain whether their conduct during the detention and arrest of Mr. Rodriguez Romero complied with the DO's respective training and agency policies, the following information possessed by the Government and employing agencies of the above named DOs:

    A. Training records for DO Tyler Baldwin with respect to any training or instruction on the use of "pressure point techniques" to gain control or arrest individuals.

    B. All policies maintained by the Department of Homeland Security and its constituent units on the use of "pressure point techniques" by federal agents while making an arrest or seeking to obtain compliance from an individual being detained.

    C. All policies maintained by the Department of Homeland Security and its constituent units on the use of deadly force, including but not limited to drawing and discharge of firearms at vehicles or individuals in moving vehicles.

    D. All policies maintained by the Department of Homeland Security and its constituent units on the investigating and reporting of use of deadline force, including but not limited to discharge of firearms.

    E. All policies maintained by the Department of Homeland Security and its constituent units on implementing traffic stops, the display of firearms during traffic stops, officer safety in connection with traffic stops, and extracting suspects from vehicles during traffic stops.

    F. Training records for DO Oscar Ibanez with respect to policies and procedures for the drawing of his firearm, display of his firearm, vehicle stops, use of deadly force, the reporting of use of force including but not limited to the use of deadly force, and

procedures for making traffic stops, ensuring officer safety during traffic stops, and extracting suspects from vehicles during traffic stops.

## CONCLUSION

This motion is based on the indictment, records and files in the above-entitled action and any and all other matters which may be presented prior to or at the time of the hearing of said motion. Mr. Rodriguez Romero asks that this matter be set for hearing, and that upon hearing, the Court order the Government to disclose the above enumerated items.

Date: March 2, 2026

S/BRUCE D. NESTOR
Bruce D. Nestor, 0318024 – MN
DE LEÓN & NESTOR, LLC
3547 Cedar Avenue South
Minneapolis, MN  55407
(612) 659-9019
(612) 436-3664 – Facsimile
nestor@denestlaw.com

ATTORNEY FOR JUAN RODRIGUEZ ROMERO